IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROWAN COUNTY, NORTH CAROLINA, )
HENDERSON COUNTY, NORTH )
CAROLINA, BEAUFORT COUNTY, )
NORTH CAROLINA, GUILFORD )
COUNTY, NORTH CAROLINA, and )
STANLY COUNTY, NORTH CAROLINA, )
on their own behalf and on )
behalf of all counties )
similarly situated, )
 )
        Plaintiffs, )
 )
  v. )      1:12CV859
 )
FEDERAL NATIONAL MORTGAGE )
ASSOCIATION, FEDERAL HOME )
LOAN MORTGAGE CORPORATION, )
and FEDERAL HOUSING FINANCE )
AGENCY, as conservator for )
FEDERAL NATIONAL MORTGAGE )
ASSOCIATION and FEDERAL HOME )
LOAN MORTGAGE CORPORATION, )
 )
        Defendants. )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before this court is Defendants' Motion to Dismiss the Plaintiffs' Consolidated Amended Complaint (Doc. 33). Defendants have filed a memorandum in support of their

motion (Doc. 34), Plaintiffs have filed a response in opposition (Doc. 43), and Defendants have filed their reply (Doc. 45). Defendants' motion is now ripe for adjudication, and for the reasons that follow, this court will grant the motion as to claim one.  As to claim two, this court will enter a declaratory judgment that Defendants Federal National Mortgage Association and Federal Home Loan Mortgage Corporation are exempt from North Carolina's Transfer Tax.

I.  **BACKGROUND**

Like many other states, North Carolina levies an excise tax "on each instrument by which any interest in real property is conveyed to another person."  N.C. Gen. Stat. § 105-228.30(a) ("Transfer Tax").  The transferor of the property "must pay the tax to the register of deeds of the county in which the real estate is located before recording the instrument of conveyance."  Id.  This excise tax "applies to every person conveying an interest in real estate located in North Carolina other than a governmental unit or an instrumentality of a governmental unit."  N.C. Gen. Stat. § 105-228.28.  Certain transfers of interest in real estate are exempted from the tax, see N.C. Gen. Stat. § 105-228.29, but none of those exemptions is relevant in this case.

Defendants Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac," together with Fannie Mae, "the Enterprise Defendants") are federally chartered private corporations. Congress chartered Fannie Mae to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716. Freddie Mac has substantially the same mission. 12 U.S.C. § 1451 note.

Defendant Federal Housing Finance Agency ("FHFA") is an independent federal agency, created under the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. § 4617 et seq.). On September 6, 2008, the Enterprise Defendants were placed under the conservatorship of the FHFA.

Pursuant to their statutory charters, the Enterprise Defendants are exempt from "all [state and local] taxation" other than real property taxes ("the Charter Exemptions"). Specifically, Fannie Mae's charter provides as follows:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, territory, possession, Commonwealth, or dependency of

-3-

>     the United States, or by the District of Columbia, or
>     by any county, municipality, or local taxing
>     authority, except that any real property of the
>     corporation shall be subject to State, territorial,
>     county, municipal, or local taxation to the same
>     extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2). Freddie Mac's charter includes a similar tax exemption:

>     The Corporation, including its franchise, activities,
>     capital, reserves, surplus, and income, shall be
>     exempt from all taxation now or hereafter imposed by
>     any territory, dependency, or possession of the United
>     States or by any State, county, municipality, or local
>     taxing authority, except that any real property of the
>     Corporation shall be subject to State, territorial,
>     county, municipal, or local taxation to the same
>     extent according to its value as other real property
>     is taxed.

12 U.S.C. § 1452(e). The FHFA's charter exemption is substantially similar to those of the Enterprise Defendants. See 12 U.S.C. § 4617(j)(2).

Rowan County, Guilford County, Stanly County, Henderson County, and Beaufort County, North Carolina ("Plaintiff Counties") filed a two-claim, putative class action complaint. In the first claim, Plaintiff Counties seek the payment of real estate transfer taxes allegedly owed by the Enterprise Defendants from at least 1972 to the present. During that period, the Enterprise Defendants have been transferors in thousands of real estate transactions in the Plaintiff Counties and throughout North Carolina. (Consolidated Amended Complaint

-4-

"Consol. Am. Compl.") (Doc. 29) ¶ 9.) Plaintiff Counties allege that the Enterprise Defendants have improperly claimed exemptions from the Transfer Tax, including (1) an exemption based on being "federal instrumentalities" and (2) an exemption based on their Charter Exemptions. (Id. ¶ 23.) In the second count, Plaintiff Counties seek a declaration that North Carolina counties are entitled to assess and collect the Transfer Tax from the Enterprise Defendants.

Jurisdiction is alleged based upon diversity (28 U.S.C. § 1332(d)) and the existence of a federal question as to the interpretation of federal law (28 U.S.C. § 1331).

**II. LEGAL STANDARD**

Defendants move to dismiss Plaintiffs' Consolidated Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550

U.S. at 556). When ruling on a Rule 12(b)(6) motion, a court must accept the complaint's factual allegations as true. Id. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Pursuant to 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." A motion to dismiss is "seldom an appropriate pleading in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail." N.C. Consumers Power, Inc. v. Duke Power Co., 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974). Instead, the record must "clearly show[] that there is no basis for declaratory relief as when the complaint does not allege an actual, genuine existing controversy." Id.; see also McKinsey & Co. v. Olympia & York 245 Park Ave. Co., 433 N.Y.S.2d 802, 802 (N.Y. App. Div. 1980) ("In the absence of a holding that a dispute is not ripe for adjudication, a court should not dismiss the complaint in a declaratory judgment action, but should declare the parties'

rights."); 22A Am. Jur. 2d. Declaratory Judgments § 232 (2013 supp.). A court may construe a motion to dismiss a claim for declaratory relief as a cross-motion for a declaration in the defendant's favor, see, e.g., Diamond v. Chase Bank, Civil Action No. DKC 11-0907, 2011 WL 3667282, at *5 (D. Md. Aug. 19, 2011), and this court will do so in this case.[1]

**III. ANALYSIS**

Defendants move to dismiss the Consolidated Amended Complaint, contending that, as a result of the Charter Exemptions, they are statutorily exempt from North Carolina's Transfer Tax. Plaintiff Counties raise four primary arguments in response: (1) under relevant Supreme Court precedent "all taxation" is a term of art that does not include excise taxes; (2) North Carolina's Transfer Tax fits within the carve-out for real estate taxes because the right to transfer real property is one right in the "bundle of sticks" associated with property

---

[1] This court has considered whether such a declaration would be barred by the Tax Injunction Act, 28 U.S.C. § 1341, which provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law." For the reasons stated in Fannie Mae v. Hamer, No. 12 C 50230, 2013 WL 591979, at *2-3 (N.D. Ill. Feb. 13, 2013), this court finds that the Tax Injunction Act does not prevent this court from construing the Charter Exemptions and declaring that those federal statutes exempt the Enterprise Defendants from payment of the excise tax imposed by N.C. Gen. Stat. §§ 105-228.28 et seq.

-7-

Case 1:12-cv-00859-WO-LPA   Document 55   Filed 09/16/13   Page 7 of 18

ownership; (3) the canon of constitutional avoidance should be used to reject Defendants' interpretation of the Charter Exemptions; and (4) if Defendants' interpretation is correct, the Charter Exemptions are unconstitutional as applied to the Transfer Tax because the Enterprise Defendants are not federal instrumentalities and the tax is a wholly local activity with little or no effect on interstate commerce. For the reasons that follow, this court finds that the Plaintiff Counties' first claim for relief should be dismissed and that Defendants are entitled to a declaration that the Enterprise Defendants are not subject to the Transfer Tax.

**(1) The Charter Exemptions and the Real Property Carve-Out**

Plaintiff Counties raise two primary arguments with regard to the proper interpretation of the Charter Exemptions. First, Plaintiff Counties contend that "all taxation" is a term of art that does not literally mean <u>all</u> taxation. Instead, according to Plaintiff Counties, it refers only to direct taxes and not to excise taxes, such as the Transfer Tax. Second, and in the alternative, Plaintiff Counties argue that the Transfer Tax falls within the real property exception to the Charter Exemptions.

These issues have been thoroughly and persuasively addressed by a number of federal courts. With only one

exception, see Oakland Cnty. v. Fed. Hous. Fin. Agency, 871 F. Supp. 2d 662 (E.D. Mich. 2012), vacated and remanded, 716 F.3d 935 (6th Cir. 2013), those courts have found that the Enterprise Defendants are exempt from taxes functionally identical to North Carolina's Transfer Tax. See, e.g., Cnty. of Oakland v. Fed. Hous. Fin. Agency, 716 F.3d 935 (6th Cir. 2013); Randolph Cnty., Ala. v. Fed. Nat'l Mortg. Ass'n, No. 3:12-CV-886-WKW, 2013 WL 3947614 (M.D. Ala. July 31, 2013); City of Providence v. Fed. Nat'l Mortg. Ass'n, ____ F. Supp. 2d ____, 2013 WL 3816429 (D.R.I. July 24, 2013); Milwaukee Cnty. v. Fed. Nat'l Mortg. Ass'n, No. 12-C-0732, 2013 WL 3490899 (E.D. Wis. July 10, 2013); City of Spokane, Wash. v. Fed. Nat'l Mortg. Ass'n, No. CV-13-0020-LRS, 2013 WL 3288413 (E.D. Wash. June 28, 2013); McNulty v. Fed. Hous. Fin. Agency, __ F. Supp. 2d __, 2013 WL 3147641 (M.D. Pa. June 19, 2013); Athens-Clarke Cnty. Unified Gov't, ____ F. Supp. 2d ____, 2013 WL 2102922 (M.D. Ga. May 14, 2013); Montgomery Cnty., Md. v. Fed. Nat'l Mortg. Ass'n, Civil Action No. DKC 13-0066, 2013 WL 1832370 (D. Md. Apr. 30, 2013); Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n, ____ F. Supp. 2d ____, 2013 WL 1235589 (D. Minn. Mar. 27, 2013); Delaware Cnty., Pa. v. Fed. Hous. Fin. Agency, Civil Action No. 12-4554, 2013 WL 1234221 (E.D. Pa. Mar. 26, 2013); Fannie Mae v. Hamer, No. 12 C 50230, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013); Nicolai v. Fed.

-9-

Hous. Fin. Agency, ____ F. Supp. 2d ____, 2013 WL 899967 (M.D. Fla. Feb. 12, 2013); Hertel v. Bank of Am. N.A., 897 F. Supp. 2d 579 (W.D. Mich. 2012); Hager v. Fed. Nat'l Mortg. Ass'n, 882 F. Supp. 2d 107 (D.D.C. 2012). This court finds no reason to deviate from those opinions.

This court finds County of Oakland v. Federal Housing Finance Agency, 716 F.3d 935 (6th Cir. 2013), particularly persuasive and adopts its analysis. Specifically, the Sixth Circuit held that the Charter Exemptions "plainly state" that the Enterprise Defendants "are exempt from 'all taxation'" and that "the plain language of the statutes should control." Id. at 940. In accordance with the Sixth Circuit, this court also finds that (1) Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95 (1941), and not United States v. Wells Fargo Bank, 485 U.S. 351 (1988), is the relevant Supreme Court precedent; (2) there is a meaningful distinction between property exemptions and entity exemptions; and (3) real estate transfer taxes are laid directly on the Enterprise Defendants. See Cnty. of Oakland, 716 F.3d at 943. "It defies common sense to argue that a tax on a transfer is not also a tax on the entity that has to pay it." Hertel, 897 F. Supp. 2d at 584; see also N.C. Gen. Stat. § 105-228.30(a) ("The transferor must pay the tax to the register of deeds of the county in which the real

-10-

estate is located before recording the instrument of conveyance.").

This court also finds that the carve-out for real estate taxes in the Charter Exemptions does not apply to the North Carolina Transfer Tax. See 12 U.S.C. § 1452(e) ("[A]ny real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed."); 12 U.S.C. § 1723a(c)(2) ("[A]ny real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed."). Plaintiff Counties are correct that the ability to transfer real property is an important property right. "Mere possession of th[is] right[], however, does not trigger the Transfer Tax[], which [is] imposed only when th[is] right[] [is] exercised. Put differently, real property is not taxed by the Transfer Tax[]; the transaction (and by extension, the participant in the transaction) is." Montgomery Cnty., 2013 WL 1832370, at *11; see also Cnty. of Oakland, 716 F.3d at 939 n.6 ("[T]he transfer tax, as a privilege tax, does not fit into the carve out allowing for taxes on real property."); McNulty, 2013 WL 3147641, at *7 ("As it is apparent that the statutes' exception to the exemption applies to taxes imposed directly on

-11-

the real property itself and not on the transfer of the real property, this court finds the plaintiff's argument that the transfer tax at hand falls within the carve-out exception unavailing."); Vadnais v. Fed. Nat'l Mortg., Civil No. 12-1598 (DSD/TNL), 2013 WL 1249224, at *3 n.8 (D. Minn. Mar. 27, 2013) (finding that "the 'real property' exception contained in the Exemption Statute does not encompass the Minnesota deed transfer tax"); Delaware Cnty., 2013 WL 1234221, at *6 ("[T]he Transfer Tax is a tax on the transaction and not on the real property itself."). This conclusion is further supported by Wells Fargo, which recognized "the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself." 485 U.S. at 355.

**(2) Constitutionality of the Charter Exemptions and Constitutional Avoidance**

Plaintiff Counties also raise several constitutional arguments. First, they contend that this court should find the Charter Exemptions unconstitutional as applied to North Carolina's Transfer Tax because the Enterprise Defendants are not federal instrumentalities and the tax is a wholly local activity. Plaintiff Counties contend that "[c]onstitutional and statutory immunity, while discrete concepts, are coextensive."

-12-

(Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Resp.") (Doc. 43) at 47.)[2] Because, according to Plaintiff Counties, the Enterprise Defendants are not federal instrumentalities, a statute exempting them from the Transfer Tax would be unconstitutional.  They also allude to arguments under the Commerce Clause and the Tenth Amendment.  Second, Plaintiff Counties ask this court to apply the canon of constitutional avoidance and adopt their interpretation of the Charter Exemptions to avoid these constitutional issues.

Despite Plaintiff Counties' argument to the contrary, constitutional and statutory immunity are not coextensive. Plaintiff Counties rely on United States v. New Mexico for the proposition that "tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned."  455 U.S. 720, 735 (1982).  That decision, however, only addresses constitutional immunity.  The New Mexico Court recognized that Congress has at least some authority to

---

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-13-

grant statutory tax immunity, as distinct from constitutional immunity, without running afoul of the Constitution. See id. at 737 ("If the immunity of federal contractors is to be expanded beyond its narrow constitutional limits, it is Congress that must take responsibility for the decision, by so expressly providing as respects contracts in a particular form, or contracts under particular programs."). Arizona Department of Revenue v. Blaze Construction Co., another opinion cited by Plaintiff Counties, also recognizes that Congress may extend tax immunity to individuals or entities which are not constitutionally immune. 526 U.S. 32, 36 (1999) ("[A]bsent a constitutional immunity or congressional exemption, federal law does not shield [a federal contractor] from [a state's] transaction privilege tax."). United States v. City of Detroit, 355 U.S. 466 (1958), further underscores the existence of a distinction between constitutional and statutory immunity. In that case, the Supreme Court acknowledged that its trend had "been to reject immunizing . . . private parties from nondiscriminatory state taxes as a matter of constitutional law." Id. at 474. However, the Court also recognized that its trend in constitutional immunity cases did not limit Congress's authority to grant statutory immunity. Id. ("Of course this is not to say that Congress, acting within the proper scope of its

power, cannot confer immunity by statute where it does not exist constitutionally.").[3]

Because Congress may confer statutory tax immunity if it does not otherwise exceed its constitutional authority, it is irrelevant whether the Enterprise Defendants are federal instrumentalities. That inquiry is relevant only to constitutional immunity, not to statutory immunity. See, e.g., First Agric. Nat'l Bank v. State Tax Comm'n, 392 U.S. 339, 341 (1968) ("Because of pertinent congressional legislation in the banking field, we find it unnecessary to reach the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities.").

---

[3] The other cases cited by Plaintiff Counties in support of their argument that constitutional and statutory immunity are "coextensive" involve interpretations of particular exemptions and do not require a different result. See Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 813 (1989) (construing the retention of immunity in 4 U.S.C. § 111 as "coextensive with the prohibition against discriminatory taxes embodied in the modern constitutional doctrine of intergovernmental tax immunity" because of similar language and purpose and the fact that the statute was "consciously drafted against the background of the Court's tax immunity cases"); United State v. District of Columbia, 669 F.2d 738, 746-47 (D.C. Cir. 1981) (concluding that a District of Columbia sales tax exemption was "coextensive with constitutionally based federal tax immunity" because the legislative history "display[ed] a clear purpose to pattern the D.C. sales tax on state sales tax laws and to limit the District's taxing power in the manner that state taxation authority is limited"). Neither decision addressed whether statutory immunity must always be coextensive with constitutional immunity.

To the extent Plaintiff Counties raise arguments under the Commerce Clause and the Tenth Amendment, those arguments collapse into a single inquiry: Are the Charter Exemptions as applied to state transfer taxes valid exercises of Congress's constitutional power?  See New York v. United States, 505 U.S. 144, 156 (1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress.").  Plaintiff Counties suggest that the Commerce Clause does not provide Congress with such authority; however, they present little argument other than their contention that the Transfer Tax is "a wholly local activity with little or no effect on interstate commerce."  (Pls.' Resp. (Doc. 43) at 19.)  The constitutionality of the Charter Exemptions has already been thoroughly addressed in Montgomery County, Md. v. Federal National Mortgage Association, Civil Action No. DKC 13-0066, 2013 WL 1832370, at *11-14 (D. Md. Apr. 30, 2013).  Because this court agrees with and adopts that analysis and Plaintiff Counties have not raised any argument not considered in that decision, this court finds that the Charter Exemptions are

-16-

constitutional as applied to the Transfer Tax and does not address this issue further.

This court also declines Plaintiff Counties' invitation to apply the canon of constitutional avoidance in interpreting the Charter Exemptions. That canon "has no application in the absence of statutory ambiguity." United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 495 (2001); see also Clark v. Martinez, 543 U.S. 371, 385 (2005) ("The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them."). As addressed above, the Enterprise Defendants are exempt from the Transfer Tax under the plain and unambiguous language of the Charter Exemptions.

### (3) Motion for Class Certification

Also pending is Plaintiff's Unopposed Second Motion for Class Certification and for Approval of the Parties' Plan of Class Notification (Doc. 23). This court's determination that the Consolidated Amended Complaint should be dismissed effectively moots the issue of class certification. Accordingly, this court will deny the motion as moot.

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the Plaintiffs' Consolidated Amended Complaint (Doc. 33) is **GRANTED** as to the first claim for relief.

**IT IS DECLARED** that 12 U.S.C. § 1723a(c)(2) and 12 U.S.C. § 1452(e) exempt the Enterprise Defendants from payment of the excise tax imposed by N.C. Gen. Stat. §§ 105-228.28 et seq.

**IT IS FURTHER ORDERED** that Plaintiff's Unopposed Second Motion for Class Certification and for Approval of the Parties' Plan of Class Notification (Doc. 23) is **DENIED** as **MOOT**.

A judgment will be filed contemporaneously herewith.

This the 16th day of September, 2013.

/s/ William L. Osteen, Jr.
United States District Judge